1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Hon. Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

FRANK DOLAN

         Plaintiff(s),

    v.

SENTRY CREDIT, INC., *et al.*,

         Defendants.

No. 2:17-cv-01632-RAJ

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

**NOTE ON MOTION CALENDAR:
FRIDAY, NOVEMBER 9, 2018**

## **INTRODUCTION**

    Pending before this Court are the parties' respective motions for summary judgment.

Plaintiff Frank Dolan outlined his arguments in his Motion for Partial Summary Judgment

("MPSJ"), which are incorporated herein for judicial economy.[1] In their Motion for Summary

Judgment ("MSJ"), Defendants have engaged in straw-man arguments by trying to lead this

Court to believe that they are refuting Mr. Dolan's claims while, in fact, refuting claims he did

not make. Defendants have also failed to address many violations alleged in Mr. Dolan's

Complaint, failing to even meet their initial burden to establish the absence of genuine issues

---

[1] Dkt. No. 39.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 1

**B|D** — L A W   O F F I C E   O F —
**BORIS DAVIDOVSKIY, P.S.**
ATTORNEY & COUNSELOR

6100 219th Street SW, Suite 480  T: 425.582 5200
Mountlake Terrace, WA 98043  F: 425.582.2222

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

of material fact that would entitled them to summary judgment. And, relying on the Priority of Action rule, Defendants also improperly seek to dismiss this matter, even though the two matters involve wholly different subject matters, parties, and reliefs.[2] This Court should deny Defendants' MSJ and instead grant Mr. Dolan's MPSJ.

## ARGUMENT[3]

### A. This Court Should Disregard Defendants' Straw-Man Arguments

Defendants argue that this Court should dismiss Mr. Dolan's Counts 1-18 because "it is not the law" that "merely filing suit on a debt that he disputes subjects [Defendants] to FDCPA and WCAA/WCPA exposure." (Dkt. No. 38 at 5.) Rather than address Mr. Dolan's numerous FDCPA claims, which serve as basis for Counts 1-18, Defendants substitute them with their straw-man arguments, which Defendants then seek to defeat.

Specifically, Mr. Dolan does not argue that "merely filing suit on a debt" subjects Defendants to liability. But, what *is* the law is Defendants' actions in the Collection Lawsuit[4] constitute actionable debt collection actions. *See Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031–32 (9th Cir. 2010).[5] Accordingly, irrespective of who prevails in the Collection Lawsuit, if, in the Collection Lawsuit, Defendants engaged in conduct violative of the "FDCPA and WCAA/WCPA," Defendants would, indeed, be subjected to "FDCPA and WCAA/WCPA

---

[2] The Priority of Action rule applies if the two cases at issue involve identical (1) subject matter, (2) parties, and (3) relief. *Sloan v. Horizon Credit Union*, 157 Wn. App. 1016 (2010), *as amended on reconsideration* (Nov. 2, 2010) (citing *Am. Mobile Homes of Wash., Inc. v. Seattle–First Nat'l Bank*, 115 Wn.2d 307, 317 (1990).

[3] Mr. Dolan has previously articulated the basic relevant facts and the applicable standard on summary judgment, which are incorporate here. (Dkt. No. 39 at 2-6.)

[4] Defendants refer to the underlying state collection action as "Consumer Action." (Dkt. No. 38 at 2.) In his MPSJ, Mr. Dolan refers to this state action as "Collection Lawsuit." For consistency's sale, this Response will continue to refer to the underlying state collection lawsuit as "Collection Lawsuit."

[5] *See also* Complaint at ¶ 6.10.

LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480  T: 425.582.5200
Mountlake Terrace, WA 98043  F: 425.582.2222

exposure." Moreover, not all Defendants' violations serving as basis for Counts 1-18 were committed in the Collection Lawsuit, which violations Defendants have failed to even address. (*See* Complaint at ¶¶ 6.11-6.15.) Because Defendants have failed to address Mr. Dolan's alleged FDCPA claims—of which there are at least 18 serving as basis for Counts 1-18 (*Id.*), Defendants have failed to even meet their initial burden to establish the absence of genuine issues of materials fact that would entitle them to summary judgment. This Court should deny Defendants' MSJ on Counts 1-18 and instead grant Mr. Dolan's MPSJ.

**B. This Court Need Not Decide Whether Defendants Improperly Collected Prejudgment Interest On The Basis That The Medical Debt Is Unliquidated Because Defendants' Attempts To Collect Prejudgment Interest From A Date Before The Medical Debt Even Existed Is Alone Sufficient To Find A Violation**

One issue in this matter is whether Defendants improperly collected or attempted to collect prejudgment interest on the alleged medical debt. Mr. Dolan's argument on this issue is two-fold. First, as previously briefed to this Court, Defendants improperly collected or attempted to collect prejudgment interest as calculated from a date before at least a portion of the alleged medical debt even existed. (Dkt. No. 39 at 9-11.)[6] Second, Defendants improperly collected or attempted to collect prejudgment interest because, even if the debt is valid, the debt is unliquidated and, therefore, could have accrued no prejudgment interest. *See Harris v. Drake*, 116 Wn. App. 261,290 (2003), *aff'd*, 152 Wn.2d 480 (2004). Defendants challenge only the latter claim and fail to address the former claim. (Dkt. No. 38 at 6-11.)

As an initial matter, because Defendants have failed to address the first claim, they have failed to sustain their initial burden on summary judgment on this issue. But, this Court need

---

[6] *See also* Complaint at ¶ 6.13, xv.



not reach whether the alleged medical debt is unliquidated because—even if the debt is liquidated (which it is not)—for the reasons discussed in Mr. Dolan's MPSJ, Defendants also improperly collected or attempted to collect prejudgment interest on at least a portion of this when they collected or attempted to collect prejudgment interest from a date before at least a portion of the debt even existed. (Dkt. No. 39 at 9-11.) This violation, alone, is sufficient to establish liability under the FDCPA.

Finally, Defendants' MSJ on Counts 19-36 is based entirely on the argument that the medical debt is liquidated. (Dkt. No. 38 at 6-11.) But, Counts 19-36 are also based on Defendants' other violations (Complaint at ¶¶ 6.16-6.21), which include violations serving as basis for the above-discussed Counts 1-18, which Defendants have failed to even address. Thus, Defendants have failed to meet their burden on summary judgment on Counts 19-36.

**C. The Medical Debts In Question Are Unliquidated, And Unliquidated Debts May Not Accrue Prejudgment Interest**

If this Court does reach this issue, this Court should conclude that the medical debt was unliquidated and could lawfully accrue no prejudgment interest. Under Washington law, prejudgment interest is proper only when: (1) an amount claimed is "liquidated" or (2) the amount of an "unliquidated" claim is for an amount of money that is "determinable by computation with reference to a fixed standard contained in [a] contract, without reliance on opinion or discretion." *Prier v. Refrigeration Eng'g Co.,* 74 Wn.2d 25, 32 (1968). A "liquidated" claim is defined as one whose "exact amount is fixed and known." *Id*. Hence, medical debts are often unliquidated, such as the medical debts at issue in this case and, therefore, can accrue no interest until they are liquidated. *See Harris supra*; *Fox v. Mahoney* 106 Wn. App. 226 (2001). Although *Harris* and *Fox* are personal injury cases, the

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 4



LAW OFFICE OF
**BORIS DAVIDOVSKIY, P.S.**
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480 | T: 425.582.5200
Mountlake Terrace, WA 98043  F: 425.582.2222

underlying principles are identical: Until the trier of fact establishes reasonable cost of medical expenses, the medical debt is unliquidated. Moreover, *Harris* relied on *Prier,* 74 Wn.2d 25 (a contract case), and *Fox* relied on *Car Wash Enters., Inc. v. Kampanos,* 74 Wn.App. 537, 548 (1994) (also a contract case). Furthermore, Washington State Supreme Court has recognized the inherent unfairness of assessing prejudgment interest on unliquidated sums. *Rekhter v DSHS*, 180 Wn.2d 102, 124 (2014) ("[i]t would be unfair to hold a [party] accountable for interest on an amount that is unquantifiable and unforeseeable").

This principle—that unliquidated claims can accrue no prejudgment interest—remains true regardless of the nature or origin of a debt. This case is no exception. In the Collection Lawsuit, Defendants claim that Mr. Dolan owes money for medical services based on a contract. (*See*, e.g., Dkt. No. 39-1 at 6-8.) But, that purported contract, entitled "Financial Policy," which was an agreement to be provided care, provided no fixed standard or objective way with which to determine the charges, must less any fixed amount for the care to be provided. (*See* Dkt. No. 38-2 at 9, 24, 18.) While Mr. Dolan did agree to the surgery, he was never informed of any prices. Nor was his consent to any prices ever obtained. All he consented to was provision of medical services. Again, liquidated damages must be calculable on the face of the contract. Nowhere in the agreement is any specific amount or rate discussed, and nowhere in the agreement is there any method by which a fixed amount can be determined. Nothing in the contract enables Mr. Dolan, Defendants, or anyone else to "solve for X" to allow Mr. Dolan to know what he would owe. There is no objective method under the contract by which the amounts Defendants sought (after services were provided) could be ascertained, or "liquidated." Defendants seek a shortcut by circular reasoning: The amounts are supposedly

LAW OFFICE OF
**BORIS DAVIDOVSKIY, P.S.**
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480  T: 425.582.5200
Mountlake Terrace, WA 98043   F: 425.582.2222

1    liquidated because after the surgery, the service provider unilaterally chose what the price
     would be. That is not how damages are liquidated.

2
3          Defendants further argue that the medical debt is liquidated because, if the trier of fact
     believes Defendants' evidence in the Collection Action, the trier of fact can compute the
4
     amount due with exactness by adding up the bills and subtracting the payments. (Dkt. No. 38 at
5
6    8.) Defendants miss the point, however. Taken to their argument's logical extreme, if
7    Defendants were correct, unliquidated debts would not exist: All the trier of fact would need to
8    do is "believe" the plaintiff's evidence and compute the amount with exactness by adding up
9    the plaintiff's evidence. Because the trier of fact must determine the propriety of the alleged
10   medical debt, the medical debt is unliquidated until the trier of fact so determined.

11
           This fact is further illuminated by Mr. Dolan's testimony that he did not receive "100%
12
     of the services that had been paid for" and that he had received "partially inadequate and
13
     defective medical treatment in connection with that surgery." (Dkt. No. 39-2 at ¶¶ 45-48.) If
14
     proven, even if the alleged medical debt is otherwise valid, Mr. Dolan would not owe the entire
15
16   claimed amount. As such, the propriety of the medical services and, therefore, of the total
17   amount due demonstrably turns on the reliance on professional opinion or discretion. Put
18   another way, the trier of fact cannot determine the medical debt's value without having to look
19   to opinion evidence. The fact finder must determine the reasonable value of the services, which
20   then liquidates the debt. And, whether it be a contract or personal injury case, establishing the
21   amount of the debt would require each side to present testimony concerning the value of the
22
     services. Using the opinions of medical professionals as evidence, the trier of fact must then
23
     decide the amount owed, if any. Put yet another way, if Proliance charged Mr. Dolan ten
24

25
     PLAINTIFF'S RESPONSE TO DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT - 6



million dollars for his surgery, that would not automatically render that amount due and owing because only a reasonable amount for those services would be due. Hence, the medical debt in question is not—and cannot be—liquidated until the trier of fact has determined its propriety.

Further, the Washington Health Care Authority cited by Defendants is inapposite. The regulations apply to hospitals, not Defendants' assignors. *See* WAC 246-453-001. And, the regulations prohibit interest in sliding fee situations only. WAC 246-453-050(1)(c). Defendants miss the point when they argue that "if medical debt were unliquidated, the latter regulation would be unnecessarily." For, absent the regulation, the charges in sliding fee situations could at some point became liquidated and, therefore, incur interest. Defendants' reliance on WAC 182-527-2738 is similarly misplaced: Mr. Dolan does not argue that all medical debt can incur no interest. Rather, certain medical debt not "determinable by computation with reference to a fixed standard contained in [a] contract, without reliance on opinion or discretion" cannot accrue prejudgment interest until it is liquidated.[7]

Finally, in a December 2016 article, while criticizing state court judges generally, Defendants' counsel conceded that "agencies that continue to seek prejudgment interest on medical debt run the risk of violating 15 U.S.C. §§1692e(2), e(5), e(11), and f(1), the FDCPA unfair and deceptive practices portion of the FDCPA." (Declaration of Boris Davidovskiy in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment ("Davidovskiy Opposition Decl.") at ¶ 4, Ex. C.) In 2016, Defendants were represented by that same counsel. Still, at their own peril, Defendants—recklessly and knowingly—attempted to collect

---

[7] For example, if a medical debt consists of charges for bandages only, the medical debt may be determinable by computation with reference to the exact price of the bandages.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 7

prejudgment interest on the medical debt at issue in this case. This Court should deny Defendants' MSJ on this issue and instead grant summary judgment for Mr. Dolan.

**D. Defendants' MSJ With Regard To Plaintiff's Counts 37-39 Is Misplaced**

In the Complaint, Mr. Dolan alleges that Defendants violated 15 U.S.C. § 1692g on at least three occasions when Defendants failed to: (1) include in the initial communication to him that he had a right to request verification and/or validation of the alleged debt; (2) state in their initial written communication to him that the amount of the debt might vary from day to day; and (3) notify him in in their initial written communication of his right to obtain an up-to-date amount of the alleged debt. Complaint at ¶¶ 6.22-6.30.

Congress considered debt verification significant. *See* S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4, reprinted in 1977 U.S.C.C.A.N. 1695, 1696. Indeed, Section 1692g is a strict liability provision; an unintentional violation of the verification requirements violates the FDCPA.[8] Importantly, as previously briefed to this Court, each debt collector must provide a notice of the debtor's Section 1692g rights. (Dkt. No. 39 at 21-23.)

Here, the initial communication between Mr. Dolan and Defendants occurred on August 17, 2017 (Dkt. No. 39-2 at ¶ 8). *See* U.S.C. § 1692g(2). Thereafter, Defendants provided to Mr. Dolan certain written information about the alleged medical debt, including billing statements. (Dkt. No. 39-2 at ¶ 37.) As an initial matter, this written communication

---

[8] *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 36 (2d Cir. 1996) ("Once it is shown that defendant sent the February and March notices and that they failed to fulfill the [§ 1692g] requirements of the Act, strict liability is imposed."); *see also Anderson v. Credit Bureau Collection Services, Inc.*, 422 Fed. Appx. 534 (7th Cir. 2011) (FDCPA is a strict-liability statute, and a consumer is entitled to sue to enforce its provisions, even "highly technical" ones like notice requirement and prohibition against sharing personal information with third parties; requiring proof of injury would run afoul of statutory scheme); *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135(2d Cir. 2011); *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 86 (2d Cir. 1998); *Booth v. Collection Experts, Inc.*, 969 F. Supp. 1161 (E.D. Wis. 1997).

**BD** — LAW OFFICE OF —
**BORIS DAVIDOVSKIY, P.S.**
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480  T: 425.582.5200
Mountlake Terrace, WA 98043  F: 425.582.2222

1  is dated August 29, 2017, 12 days after the initial communication with Mr. Dolan and,

2  therefore, violates the five-day requirement. In addition, this written communication also

3  fails to contain the requisite information, including a statement that Mr. Dolan has the right

4  to dispute and seek verification of the debt; request the name and address of the original

5  creditor; and obtain an up-to-date amount of the debt. *Id*. Further, to the least sophisticated

6  debtor, while Defendants' documents name "current" creditors, the documents are

7  ambiguous whether the original creditors differ from the current ones. *Id*. And, Defendants'

8  materials fail to state that the amount of the debt might vary from day to day because of, for

9  example, interest, late charges, or other charges. *Id*. Nor do Defendants argue that this

10 written communication complies with 15 U.S.C. § 1692g.

11      Instead, Defendants argue that they complied with 15 U.S.C. § 1692g because a

12 validation notice was mailed to Mr. Dolan before Defendants first communicated with him

13 (Dkt. No. 38 at 12.) Specifically, Defendants allege that West Coast Adjusters—whose

14 assets Defendants claim to have acquired in 2016 (Dkt. No. 38-2 at ¶ 4)—had mailed to Mr.

15 Dolan two validation notices on May 8, 2014 and January 31, 2015. *Id*. (*See also* Dkt. No.

16 38 at 12.) As such, Defendants argue "since [West Coast Adjusters] timely mailed the

17 validation notices to the proper address, they are presumed received…Here, there is no

18 question that Defendants sent the validation notices to plaintiff's residence." But—contrary

19 to Defendants' representations—*Defendants* did <u>not</u> send those notices to Mr. Dolan.

20 Instead, assuming, *arguendo*, Defendants' representations are otherwise accurate—by

21 Defendants' own admission—*West Coast Adjusters* had sent those notices, not Defendants.

22

23

24

25

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 9



LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480  T: 425.582.5200
Mountlake Terrace, WA 98043  F: 425.582.2222

This undisputed fact is fatal to Defendants' position. The weight of authority requires each debt collector to send a debt verification rights notice.[9] As stated, Congress intended the validation provision to apply to each debt collector's first communication. Defendants' first communication with Mr. Dolan's triggered a duty to provide the requisite information notwithstanding compliance by any prior debt collector. Indeed, the rise of the debt buying industry, with a model of not obtaining business records and documentation for the debts they purchase, makes this provision even more important to consumers and the integrity of our civil court system.[10] Because Defendants failed to provide the requisite notice to Mr. Dolan, Defendants violated 15 U.S.C. §1692g.

---

[9] *See Hernandez v. Williams, Zinman & Parham P.C.*, 829 F.3d 1068 (9th Cir. 2016); *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006); *Sanchez v. Jackson*, 2016 WL 6833974 (N.D. Ill. Nov. 21, 2016) (attorney debt collector acting as agent on behalf of another debt collector must provide his own § 1692g notice listing himself, not his client, as the entity providing verification or name of original creditor); Tocco v. Real Time Resolutions, Inc., 48 F. Supp. 3d 535, 539 (S.D.N.Y. 2014); *Lewis v. Nationstar Mortg.*, 5 F. Supp. 3d 890 (E.D. Mich. 2014); *Wright v. Ocwen Loan Servicing, L.L.C.*, 2013 WL 5532687 (E.D. Mich. Oct. 7, 2013); Robinson v. Nationstar Mortg., L.L.C., 2012 WL 5596421 (S.D. Ohio Nov. 15, 2012) ("It is implausible to think that Congress, concerned with 'dunning the wrong person,' would limit disclosure requirements to a narrow range of debt collectors—those that are the first to seek recovery on a given debt. Instead, an interpretation that requires all debt collectors to comply with the validation and disclosure requirements best promotes the goal of protecting consumers."); *Stair v. Thomas & Cook*, 254 F.R.D. 191, 197 (D.N.J. 2008); *Goray v. Unifund CCR Partners*, No. 06-00214, 2007 WL 4260017, at *8 (D. Haw. Dec. 4, 2007); *Nichols v. Byrd*, 435 F. Supp. 2d 1101, 1106–1107 (D. Nev. 2006); *Turner v. Shenandoah Legal Group, P.C.*, 2006 WL 1685698 (E.D. Va. June 12, 2006) (collection attorney required to provide notice); *Senftle v. Landau*, 390 F. Supp. 2d 463, 475 (D. Md. 2005); *Francis v. Snyder*, 389 F. Supp. 2d 1034, 1040 n. 2 (N.D. Ill. 2005); *Horkey v. J.V.D.B. & Assoc.*, 179 F. Supp. 2d 861 (N.D. Ill. 2002) (notice by collector's attorney not identifying the collection agency client did not excuse collection agency), *aff'd on other grounds*, 333 F.3d 769 (7th Cir. 2003); *Tipping-Lipshie v. Riddle*, 2000 WL 339639167 (E.D.N.Y. Mar. 1, 2000) (prior collection agency); *Sutton v. Law Offices of Alexander L. Lawrence*, 1992 U.S. Dist. LEXIS 22761 (D. Del. June 17, 1992); *Griswold v. J&R Anderson Bus. Services, Inc.*, 1983 U.S. Dist. LEXIS 20365 (D. Or. Oct. 21, 1983) (subsequent collection agencies). *See also Durham v. Continental Cent. Credit*, 2010 WL 2776088 (S.D. Cal. July 14, 2010) (second notice required because of great amount of time and possibility that the debts were different); *Thomas v. Law Firm of Simpson & Cybak*, 2001 U.S. Dist. LEXIS 19456 (N.D. Ill. Nov. 16, 2001), *rev'd on other grounds*, 392 F.3d 914 (7th Cir. 2004)

[10] *See LHR, Inc. v. T-Mobile USA, Inc.*, 930 N.Y.S.2d 731 (N.Y. App. Div. 2011) (holding creditor had no duty under FDCPA to preserve and retain its underlying documents necessary to verify the debts in a debt buyer's suit against original creditor for breach of contract and other claims).

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 10

LAW OFFICE OF
**BD** **BORIS DAVIDOVSKIY, P.S.**
ATTORNEY & COUNSELOR

6100 219th Street SW, Suite 480  T: 425.582.5200
Mountlake Terrace, WA 98043  F: 425.582.2222

Even if Defendants could rely on West Coast Adjusters' communication to Mr.

Dolan—which they cannot—West Coast Adjusters' debt validation notices also violate 15

U.S.C. §1692g. First, the notices fail to state that the amount of the debt might vary from

day to day because of, for example, interest, late charges, or other charges. (*See* Dkt. No.

38-2 at 3; *see also* Dkt. No. 39-1 at 86.). Second, the notices fail to state the total amount of

the alleged debt at issue in this matter. Specifically, Defendants are adamant they are

entitled to collect prejudgment interest on the alleged medical debt. But, West Coast

Adjusters' notices fail to provide the amount of the interest being claimed on the alleged

debt. (Dkt. No. 39-1 at 86, 88.) Indeed, while West Coast Adjusters' notices state principal

amounts of $1,349.13 and $1,479.02, they state nothing under the "Client Interest" column

and instead claim $0.44 and $0.49 in West Coast Adjusters' own interest under the "WCA

Interest" column. Moreover, the principal amount of $1,479.02 from "Proliance Hand

Wrist" contradicts the amount Defendants later demanded in the Collection Lawsuit for that

same creditor. (*See*, e.g., Dkt. No. 39-1 at 7.)

Curiously, Defendants' filed versions of those notices contain redactions in virtually

all the material columns, including the "Client Interest" column; as a result, if Mr. Dolan

had not filed his own copies of those notices, this Court would not have been able to

determine what exactly West Coast Adjusters had stated in its purported validation notices.

(Dkt. No. 38-2 at 3). This revelation is disturbing. Nothing requires that this information be

redacted. Even if Defendants did not purposefully redact this information to try to conceal

from this Court's record that they had failed to properly inform Mr. Dolan about the total

amount of the alleged debt in part by failing to disclose the total interest, which Defendants

LAW OFFICE OF
**BORIS DAVIDOVSKIY, P.S.**
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480   T: 425.582.5200
Mountlake Terrace, WA 98043   F: 425.582.2222

later collected or attempted to collect in their Collection Lawsuit,[11] for the above-discussed reasons, this Court should conclude that Defendants violated 15 U.S.C. § 1692g.

This Court should deny Defendants' MSJ on this issue and instead grant summary judgment for Mr. Dolan. (*See* Dtk. No. 39 at 21-23.)

### E.  This Court Should Deny Defendants' MSJ Plaintiff's State Claims

*Plaintiff's state claims based on Counts 1-39*

For the reasons discussed above, Defendants have failed to even meet their initial burden to establish the absence of material facts regarding Counts 1-39. Because Defendants' MSJ on Mr. Dolan's state claims based on Counts 1-39 is based entirely on those same arguments—which, again, do not even address most violations alleged in the Complaint—the Court should deny Defendants' MSJ on Mr. Dolan's state claims based on Counts 1-39.

*Plaintiff's Counts 40-42*

Counts 40-42 are based on Defendants' violations of Wash. Rev. Code 19.16.250(8) and (9), the WCAA, which is Washington's counterpart to the FDCPA. *See Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 897 (Wash. 2009). "Like the FDCPA, [WCAA] prohibits collection agencies from making false representations as to the legal status of a debt, threatening the debtor with impairment of credit rating, attempting to collect amounts not actually owed, or implying legal liability for costs not actually recoverable, such as attorney fees or investigation fees, among other practices." *Id*. (citing Wash. Rev. Code § 19.16.250).

---

[11] In addition, West Coast Adjusters' notices show that West Coast Adjusters improperly increased the amount of the alleged medical debt by adding its own interest, and not that of the creditors.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 12



LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480 T: 425.582.5200
Mountlake Terrace, WA 98043 F: 425.582.2222

WCAA provides no debtor with a cause of action. *Genschorck v. Suttell & Hammer, P.S.*, Case No. C12-0615-TOR, slip op. at 3 (E.D. Wash. Nov. 21, 2013) (citing *Connelly v. Puget Sound Collections, Inc.*, 553 P.2d 1354 (Wash. 1976)). Rather, a violation of WCAA represents a *per se* violation of the WCPA. Wash. Rev. Code § 19.16.440; *Evergreen Collectors v. Holt*, 803 P.2d 10, 12 (Wash. Ct. App. 1991). Once a plaintiff establishes a per se violation of the WCPA, she need only demonstrate that the violation proximately caused injury to her person or property. *Panag*, 204 P.3d at 885 (citation omitted).

As previously briefed to this Court, Defendants violated Wash. Rev. Code 19.16.250(8). (Dkt. No. 39 at 26.) Defendants' sole argument on this issue rests on the misguided proposition that West Coast Adjuster's above-discussed validation notices comply with this statute. For the reasons discussed above, they do not. Given that the WCAA is Washington's counterpart to the FDCPA, Defendants could not (and should not be able to) rely on any notices that may have been sent to Mr. Dolan by any prior debt collector. Indeed, that Defendants' predecessor may have complied with this statute years ago—which West Coast Adjusters did not—is unimportant: By its plain terms, Wash. Rev. Code § 19.16.250(8) applies to *current* licensees or collection agencies. Simply put: Each licensee or collection agency must provide this notice to consumer. *See* Dkt. No. 39 at 22-23.

In any event, West Coast Adjusters' notices violate this statute for several reasons. First, the notices fail to state the name of the original creditor. *See* Wash. Rev. Code 19.16.250(8)(b). Instead, the notices state "[i]f your request this office in writing within 30 days after receiving this notice, this office will provide you with the name of the original creditor, if different from the current creditor." (Dkt. No. 39-1 at 86, 88.) At a minimum, to

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 13



LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR

6100 219th Street SW, Suite 480  T: 425.582 5200
Mountlake Terrace, WA 98043  F: 425.582.2222

the least sophisticated debtor, the notices are ambiguous whether the listed creditor is the original creditor and, therefore, demonstrably violate this statute. Moreover, under Wash. Rev. Code 19.16.250(8)(b), Mr. Dolan requested that Defendants provide him with, *inter alia*, the name of the "original creditor." (Dkt. No. 39-2 at 34.) Defendants failed to do so. (*See* Dkt. No. 39-2 at 36, 41). And, putting aside Defendants' failure to produce the requested information in violation of this statute, Defendants also violated the statute when they failed to "cease efforts to collect on the debt until this information is provided." *See* Wash. Rev. Code 19.16.250(8)(b).

Second, West Coast Adjusters' notices indisputably fail to provide an itemization of the claim asserted. (Dkt. No. 39-2 at 86, 88.) Other than providing the claimed principal balance, noticeably absent from the notices is any itemization of the total amount. For example, the statute requires that the notice provide "late payment charges, if any, added to the original obligation by the original creditor." Wash. Rev. Code 19.16.250(8)(c)(ii). In fact, the record reflects that the original creditor did add late charges to the alleged original obligation. (Dkt. No. 39-2 at 37.) The late charges included $10.25 "Service Fees," which constituted "late fees" under the Financial Policy. (*See* Dkt. No. 39-1 at 65.) Furthermore, the "original creditor" added most of those "late fees" to the alleged original obligation <u>before</u> West Coast Adjusters sent its notices in or about May 8, 2014 and January 31, 2015 (Dkt. No. 38-2 at ¶ 4). (Dkt. No. 39-2 at 37.) And, on May 6, 2014, before any of West Coast Adjustors' purported notices were sent to Mr. Dolan, the original creditor also added to the alleged original obligation an adjustment of $4.95. (Dkt. No. 39-2 at 42.) Yet, noticeably absent from

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 14

LAW OFFICE OF
**BD** BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR

6100 219th Street SW, Suite 480  T: 425.582.5200
Mountlake Terrace, WA 98043  F: 425.582.2222

West Coast Adjusters' notices is any such itemization of the total amount, which is required under Wash. Rev. Code 19.16.250(8)(c)(ii).

Nor did West Coast Adjusters provide any other information about the prejudgment interest in violation of Wash. Rev. Code 19.16.250(8)(c)(iii). Defendants now seem to claim—with no support—that "Proliance did not charge interest pre-collection." (Dkt. No. 38 at 15.) This position seems disingenuous in part because Defendants collected or attempted to collect prejudgment interest from the date of the surgery, not from the date the alleged debt was assigned to them for collection. (*See*, e.g., Dkt. No. 39-1 at 29 (demanding interest from "06/10/2013")).

Nor did Defendants provide any notice to Mr. Dolan that the alleged medical debt would effectively double because of interest if he did not pay the total claimed amount. Specifically, West Coast Adjusters' May 8, 2014 and January 31, 2015 letters state that the total amount due is $1,349.13 and $1,479.51, respectively. (Dkt. No. 39-1 at 86, 88.) But, the letters contain no notice that the total amount due would almost double because of interest "post-collection." Indeed, in the Collection Lawsuit, Defendants later demanded additional $1,417.57 as prejudgment interest. (Dkt. No. 39-1 at 10.)

In short, this Court should disregard Defendants' demonstrably unsuccessful attempts to argue that West Coast Adjusters' letters comply with the WCAA. They do not.

Finally, Defendants also violated Wash. Rev. Code 19.16.250(9), which prohibits communicating in writing with a debtor concerning a claim through a proper legal action, process, or proceeding, where such communication is the first written communication with the debtor, without providing the information set forth in Wash. Rev. Code 19.16.250(8).

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 15

For the reasons discussed above, Defendants failed to provide the information set forth in Wash. Rev. Code 19.16.250(8). And—by Defendants' own admission—the Collection Lawsuit was their first communication with Mr. Dolan concerning the alleged medical debt because the prior (purportedly attempted) communications had been done by West Coast Adjustors, a different debt collector whose assets Defendants later acquired.

In sum, this Court should deny Defendants' MSJ on Plaintiff's Counts 40-42 and instead grant summary judgement for Mr. Dolan. (*See* Dkt. No. 39 at 26.)

*Plaintiff's Counts 43-44 (violation of Wash. Rev. Code § 19.16.250(13) and (15))*

Defendants have failed to sustain their burden on summary judgment on Counts 43-44. Defendants' MSJ on Count 43 is based solely on Defendants' straw-man arguments regarding Counts 1-18 that "[n]othing in the law in this state recognizes that merely filing suit on a debt violates this statute." (Dkt. No. 38 at 15.) Such is not Mr. Dolan's argument here. (Complaint at ¶¶ 7.15-7.19.) Rather, in the Complaint's relevant section, Mr. Dolan incorporates his previously stated allegations (Complaint at ¶ 7.15) and asserts that "Defendants violated this statute when they engaged in the above-described actions[.]" Defendants' violations in question include the violations they committed on the August 17, 2017 call, which violations Mr. Dolan has previously briefed to this Court. (Dkt. No. 39 at 9-21.) Because Defendants do not even attempt to address the allegations in the Complaint serving as basis for Count 43, Defendants simply have failed to meet their initial burden to establish the absence of any genuine issues of material fact on this issue.

Similarly, Defendants' MSJ on Count 44 is based entirely on their argument regarding Counts 19-36 that prejudgment was proper because the medical debt is



LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480  T: 425.582.5200
Mountlake Terrace, WA 98043  F: 425.582.2222

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

liquidated. (Dkt. No. 38 at 6-11.) But, Counts 19-36 are also based on Defendants' other violations (Complaint at ¶¶ 6.16-6.21), which include violations serving as basis for Counts 1-18, which Defendants have also failed to address.

In sum, this Court should deny Defendants' MSJ on Counts 43-44 and instead grant summary judgment for Mr. Dolan on those counts. (*See* Dkt. No. 39 at 24-26.)

*Plaintiff's Counts 45-50 (violation of Wash. Rev. Code § 19.16.250(16))*

Defendants' MSJ on Counts 45-50 is based solely on Defendants' arguments regarding Counts 1-36 and Count 44, including a variation of their straw-man argument that "the Washington legislature has not yet outlawed debt collection through litigation." (Dkt. No. 38 at 16.) For the reasons discussed above, Defendants have failed to meet their burden on summary judgment on those counts. *See also Donohue*, 592 F.3d at 1031–32 (concluding that a complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f). This Court should deny Defendants' MSJ on Counts 45-50 and instead grant summary judgment for Mr. Dolan. (*See* Dkt. No. 39 at 24-26.)

*Plaintiff's Counts 51-55 (violation of Wash. Rev. Code § 19.16.250(21) and (22))*

Defendants' MSJ on Counts 51-53 (Dkt. No. 38 at 16-17) and 54-55 (*Id*. at 17) is based entirely on Defendants' arguments regarding Counts 1-36, which arguments fail for the reasons articulated above. *Wash. Rev. Code §* 19.16.250(21) prohibits the collection or attempted collection of any amounts in addition to the principal amount of a claim other than allowable interest, collection costs, or handling fees expressly authorized by statute, and, in the case of suit, attorney's fees and taxable court costs. And, under *Wash. Rev. Code §*

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 17

19.16.250(22), a collection agency may not procure from a debtor or collect or attempt to collect on any written note, contract, stipulation, promise or acknowledgment under which a debtor may be required to pay any sum other than principal, allowable interest. As previously briefed to this Court, putting aside whether Defendants improperly collected or attempted to collect prejudgment interest on the entire alleged medical debt because the debt was unliquidated, Defendants indisputably collected or attempted to collect prejudgment interest from a date on which at least part of the alleged medical debt did not even exist, including on the August 17, 2017 call (Complaint ¶ 7.38). (*See* Dkt. No. 39 at 9-11.)[12] This Court should deny Defendants' MSJ on Counts 51-53 and instead grant summary judgment for Mr. Dolan. (*See* Dkt. No. 39 at 24-26.)

This Court should deny Defendants' MSJ on Counts 51-55 and instead grant summary judgment for Mr. Dolan on those counts. (*See* Dkt. 39 at pp. 24-26.)

*Plaintiff's WCPA claims*

As previously briefed to this Court, Defendants committed numerous violations of the WCAA, which are *per se* violations of the WCPA. (Dkt. No. 39 at 24-29.) Citing *Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097, 1113-1115 (W.D. Wash. 2012), Defendants argue that the WCAA does not declare the collection business to be one affected with the public interest. In *Moritz*, in concluding that public interest was not met, the court considered that the WCAA does not contain the required declaration of public interest

---

[12] In addition, Mr. Dolan was improperly demanded to pay prejudgment interest of $0.44 and $0.49 (Dkt. No 39-1 at 86, 88), which interest was entitled "WCA Interest" and had no basis in law or in fact because, if he can be deemed to have agreed to pay any interest on the alleged medical debt, it would be interest to the medical providers, not the debt collector.

**BD** — LAW OFFICE OF —
**BORIS DAVIDOVSKIY, P.S.**
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480  T: 425.582.5200
Mountlake Terrace, WA 98043  F: 425.582.2222

element. *Id.* at 1113. But, Washington courts have expressly held that a violation of the WCAA is a per se violation of the WCPA. *Evergreen Collectors v. Holt*, 803 P.2d 10, 12 (Wash. Ct. App. 1991).[13] And, once a plaintiff establishes a *per se* violation of the WCPA, she need only demonstrate that the violation proximately caused injury to her person or property. *Panag*, 204 P.3d at 885 (citation omitted). Because Defendants' MSJ on Mr. Dolan's WCPA claims rests solely on the misplaced argument that "[w]ithout proof of an unfair or deceptive act or practice or evidence of public impact, the [WCPA] claim fails," this Court should deny Defendants' MSJ on this issue and instead grant summary judgment for Mr. Dolan. (*See* Dtk. 39 at 24-29.)

*Plaintiff's claim for emotional distress*

Defendants argue that Mr. Dolan will be unable to prove negligent infliction of emotional distress because Mr. Dolan did not provide his Expert Disclosures. (Dkt. No. 38 at 19.) Defendants admit that Mr. Dolan has filed a motion for additional time to submit his expert report. *Id.* Rather than reiterate the basis for motion for additional time to submit his expert report(s), for the reasons articulated therein, Mr. Dolan asks that this Court grant his motion for additional time to submit his expert reports. (*See* Dkt. Nos. 30-32, 34.) That Mr. Dolan has suffered emotional distress is more than evident in his testimony. (*Id.*; *see also* Dkt. No. 39-2 at ¶¶ 56-61.) This Court should deny Defendants' MSJ on this issue.

**D. Defendants' Argument That This Action Violates Washington's "Priority Of Action" Rule Is Misplaced.**

*Background facts*

---

[13] Although Evergreen Collectors was decided in 1991, it was cited with approval in 2009 by Washington State Supreme Court for the proposition that a violation of WCAA is a *per se* violation of the CPA. *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 53 (2009).

LAW OFFICE OF
**BORIS DAVIDOVSKIY, P.S.**
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480  T: 425.582.5200
Mountlake Terrace, WA 98043  F: 425.582.2222

In 2013, Mr. Dolan received the surgery serving as basis for the alleged medical debt. Dkt. No. 39-2 at ¶ 2. At the time, the medical provider promised him that he would not owe, or otherwise be financially responsible for, anything other than the upfront payment, which was broken down into smaller payments because he could not otherwise afford to pay for the surgery. *Id*. at ¶¶ 3-6, 13. He timely made all the required payments. *Id*. at ¶ 4.

More than four years later, Defendants sued Mr. Dolan and his wife in the Collection Lawsuit, alleging that he had failed to pay for the surgery. *Id*. at ¶ 9. Making matters worse— putting aside the validity of the underlying medical debt—in an attempt to collect on this debt, Defendants committed numerous violations of state and federal laws governing debt collection activity, as has been previously briefed to this Court. (*See* Dkt. No. 39.)

On or about September 5, 2017, Defendants filed a motion for summary judgment in the Collection Lawsuit. (Dkt. No. 39-2 at ¶ 35.) Mr. Dolan was forced to hire counsel. *Id*. at ¶ 50.

On October 30, 2017, Mr. Dolan filed the present action against Defendants in Snohomish County Superior Court Case No. 17-2-105-61-31, which Defendants removed to this Court on November 1, 2017. (Dkt. No. 1.) While Defendants' Collection Lawsuit is based on the alleged medical debt, which arises from the 2013 surgery and which Mr. Dolan allegedly owes to Proliance Hand Wrist Elbow and/or Pro Eastside Surgery Center (Dkt. No. 39-1 at 5- 8), Mr. Dolan's claims at issue in this action arise from a different subject matter: Defendants' unlawful debt collections actions that occurred in 2017, which claims are against Defendants, not Proliance Hand Wrist Elbow and/or Pro Eastside Surgery Center who are Defendants' assignors. Because Mr. Dolan's claims against Defendants involve a different subject matter

LAW OFFICE OF
BD BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480  T: 425.582.5200
Mountlake Terrace, WA 98043  F: 425.582.2222

1  from the issues in the Collection Lawsuit, instead of filing counterclaims in the Collection

Lawsuit, Mr. Dolan properly filed a separate lawsuit against Defendants.

2  *Applicable law*

3        The Priority of Action rule provides that the first forum to obtain jurisdiction over a

4  case retains exclusive authority over the case to the exclusion of other coordinate courts. *Am.*

5  *Mobile Homes of Wash., Inc. v. Seattle–First Nat'l Bank,* 115 Wn.2d 307, 317 (1990). The

6  doctrine is intended to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and

7  process. *City of Yakima v. Int'l Ass'n of Fire Fighters,* 117 Wn.2d 655, 675 (quoting *Sherwin v.*

8  *Arveson,* 96 Wn.2d 77, 80 (1981)). Jurisdiction lasts, subject only to appellate authority, " 'until

9  the matter is finally and completely disposed of.' " *Am. Mobile,* 115 Wn.2d at 316

10  (quoting *State ex rel. Greenberger v. Superior Court,* 134 Wash. 400, 401 (1925)). The

11  doctrine applies if the two cases at issue involve identical (1) subject matter, (2) parties, and (3)

12  relief. *Id.* at 317.

13  *Discussion*

14        Citing *Schaaf v. Retriever Med./Dental Payments Inc.*, 199 Wn. App. 1045 (2017),

15  Defendants seek dismissal of this matter under the Priority of Action rule. Defendants'

16  argument lacks merit. As an initial matter, unlike Mr. Dolan's present action, *Schaaf* involved

17  no consumer suing the debt collector for violation of state and federal laws arising from the

18  debt collector's actions in the attempts to collect a debt assigned to it by a third party. Instead,

19  plainly, *Schaaf* involved a contract dispute where Party A sued Party B for breach of contract in

20  one court, and Party B sued Party A in a different court for claims arising from that same

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 21



LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480  T: 425.582.5200
Mountlake Terrace, WA 98043  F: 425.582.2222

contract. *Id*. Put another way, the two lawsuits involved identical subject matters, parties, and

reliefs. *See Am. Mobile,* 115 Wn.2d at 316. Such is demonstrably not the case here:

First, the two cases involve different subject matters. On behalf of their assignors,

Defendants have sued Mr. Dolan in the Collection Lawsuit for breach of contract between him

and Proliance, *not for breach of contract between Defendants and Mr. Dolan*. Indeed, the

alleged contract serving as basis for Defendants' Collection Lawsuit had simply been

(purportedly) assigned to Defendants for collection only. (*See* Dkt. No. 39-1 at 7.) The subject

matter giving rise to the Collection Lawsuit is the surgery Proliance had performed on Mr.

Dolan in 2013. *See Id*. But, the subject matter of the present action is Defendants' violations of

the debt collection laws, which Defendants committed in or about 2017, years after the surgery,

and which need not depend on whether Mr. Dolan prevails in the Collection Action.

Second, the two cases effectively involve different parties. Mr. Dolan's claims at issue

in this matter are not directed at Proliance, the true party to the contract for breach of which

Defendants have sued Mr. Dolan in the Collection Action on Proliance's behalf. Rather, Mr.

Dolan's present action is directed at Defendants for violation of state and federal laws while

collecting or attempting to collect on the alleged medical debt. Again, while the transaction or

occurrence purportedly giving rise to the Collection Lawsuit occurred in 2013, the transactions

or occurrences giving rise to Mr. Dolan's present action occurred in or about 2017, after

Defendants had assumed responsibility for collecting on the alleged medical debt. (*See* Dkt.

No. 39-1 at 82, 90-93.)

Third, the two cases involve different reliefs. In the Collection Lawsuit, on behalf of

their assignors, Defendants seek payment on the alleged medical debt. By contrast, Mr. Dolan



LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480  T: 425.582.5200
Mountlake Terrace, WA 98043  F: 425.582.2222

seeks, *inter alia*: (a) damages against Defendants for their violations of the state and federal laws governing debt collection activity; and (b) injunctive relief barring Defendants from engaging in similar violations.

Although Mr. Dolan did try to stay the Collection Action pending the outcome of this action, he did so for the sake of judicial and counsel efficiency, not because the two actions involve identical subject matters, parties, and reliefs. (*See* Dkt. No. 38-4 at 9.) They do not. Specifically, after Defendants removed Mr. Dolan's present action to this Court, they withdraw their motion for summary judgment in the Collection Lawsuit, which motion had been noted for November 13, 2017. (Dkt. No. 39-1 at ¶ 10.) Then, while litigation was ongoing in this federal court matter, Defendants took absolutely no actions in the Collection Lawsuit until—almost a year later—they suddenly filed another motion for summary judgment in the Collection Lawsuit. (*Id*. at ¶ 11.) Although Mr. Dolan's claims against Defendants in this matter need not depend on his ability to establish that the alleged medical debt is invalid because, even if the debt is valid, Defendants are still liable for the numerous violations they have committed (*See* Dkt. No. 39.), one of the many ways in which Mr. Dolan can establish liability is to show that the medical debt is, in fact, invalid. Because Defendants have been actively litigating the validity of the alleged medical debt in this federal court matter, it made no sense to continue to litigate this issue in both forums; hence, Mr. Dolan sought to stay the Collection Lawsuit.

On September 24, 2017, Mr. Dolan successfully defended against Defendants' second motion for summary judgment in the Collection Lawsuit. (*Id*. at ¶ 12; *see also* Davidovskiy Opposition Decl. at ¶ 3.) The sole issue in the Collection Lawsuit is whether

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 23

the medical debt is valid. *Id.* In fact, Mr. Dolan's opposition to Defendants' motion for summary judgment in the Collection Lawsuit raised no issues or claims at issue in this matter. (Davidovskiy Opposition Decl. ¶ 2, Ex. A.) Hence, Defendants' violations at issue in this federal court action are not at issue in the Collection Lawsuit. *Id.*

In sum, the Priority of Action rule does not apply here.[14] Even if the medical debt is valid, Defendants, nonetheless, are liable for their numerous violations. (*See* Dkt. No. 39.) In any event, by waiting almost a year before seeking dismissal on this purported basis and by actively litigating in this federal court action, Defendants should be estopped or have otherwise waived any right to seek dismissal based on the Priority of Action rule. Accordingly, this Court should deny Defendants' motion on this issue.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment.

DATED this 5th day of November, 2018

BORIS DAVIDOVSKIY, P.S.

By: s/ Boris Davidovskiy
     Boris Davidovskiy, WSBA No. 50593
     Attorney for Plaintiff
     Frank Dolan

     6100 219th Street SW, Suite 480
     Mountlake Terrace, WA 98043
     (425) 582-5200
     boris@davidovskiylaw.com

---

[14] Defendants also rely on *Mandelas* for the proposition that "[w]here irregularities in a state action occur, the proper course is to pursue correction in state court and not file a separate federal action alleging FDCPA violations. (Dkt. No. 38 at 20.) But, *Mandelas* is inapposite because it involves no Priority of Action rule. *Mandelas v. Gordon*, 785 F. Supp. 2d 951 (W.D. Wash. 2011). And, as stated, Defendants' actions in the Collection Lawsuit constitute actionable debt collection actions. *See Donohue*, 592 F.3d at 1031–32.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 24



LAW OFFICE OF
BORIS DAVIDOVSKIY, P.S.
ATTORNEY & COUNSELOR
6100 219th Street SW, Suite 480  T: 425.582.5200
Mountlake Terrace, WA 98043  F: 425.582.2222

## CERTIFICATE OF SERVICE

I, Boris Davidovskiy, hereby certify that on November 5, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

***Attorney for Defendants***
Andrew D. Shafer            ashafer@sksp.com

DATED this 5th day of November, 2018

BORIS DAVIDOVSKIY, P.S.

By: s/ Boris Davidovskiy
    Boris Davidovskiy, WSBA No. 50593
    Attorney for Plaintiff
    Frank Dolan

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 25



6100 219th Street SW, Suite 480  T: 425.582.5200
Mountlake Terrace, WA 98043  F: 425.582.2222