UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANK DOLAN, | |
|                Plaintiff, | CASE NO. C17-1632 RAJ |
|    v. | ORDER |
| SENTRY CREDIT, INC., et al., | |
|                Defendants. | |

## I. INTRODUCTION

This matter comes before the court on Plaintiff's Motion for Partial Summary Judgment (Dkt. # 39) and Defendants' Motion for Summary Judgment (Dkt. # 38).[1] For the reasons stated below, the court **DENIES** Plaintiff's Motion, **GRANTS IN PART**

---

[1] The Court notes that both parties' briefing is replete with footnoted legal citations. Footnoted citations serve as an end-run around page limits and formatting requirements dictated by the Local Rules. *See* Local Rules W.D. Wash. LCR 7(e). Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult." *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *1 (D. Ariz. Jan. 24, 2014). The Court strongly discourages the parties from footnoting their legal citations in any future submissions before this Court. *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899-900 (9th Cir. 1994).

Defendants' Motion, and **REMANDS** Plaintiff's remaining claims to Snohomish County Superior Court.

## II. BACKGROUND

This case concerns Plaintiff Frank Dolan's ("Plaintiff" or "Mr. Dolan") contacts with Defendant Sentry Credit, Inc. d/b/a West Coast Adjusters ("Defendant," or "SCI" and "WCA") and in Defendant's attempts to collect on two debts that Plaintiff allegedly owed to Proliance Eastside Surgery Center and Proliance Hand Wrist and Elbow.

On June 10, 2013, Mr. Dolan received medical treatment for his hand at Evergreen Orthopedic, a division of Proliance Surgeons, Inc. Dkt. # 38-2 at p. 2, ¶ 4. Evergreen Orthopedic later became Proliance Eastside Surgery Center. Dkt. # 29-1 at 38. Proliance Hand Wrist and Elbow, also a division of Proliance Surgeons, Inc., was the facility for the surgeon's professional fees. Dkt. # 38-2 at p. 2, ¶ 4. Plaintiff contends that at the time, the medical providers verbally and expressly promised him that he would not owe, or otherwise be financially responsible for, anything other than the upfront payment, which was broken down into smaller payments because Mr. Dolan could not otherwise afford to pay for the surgery. Dkt. # 39 at 2.

Both Proliance Eastside Surgery Center and Proliance Hand Wrist and Elbow charged Plaintiff for medical services. Plaintiff initially provided partial payments to Proliance, but ceased after a few months. Dkt. # 39-1 at 38-41, 60-62. Both Proliance Eastside Surgery Center and Proliance Hand Wrist and Elbow sent multiple invoices to Plaintiff's address for the remainder of the medical debt, but did not receive a response. *Id*. Proliance then assigned the Proliance Eastside Surgery Center and Proliance Hand Wrist and Elbow debts to CN Collections Inc. dba West Coast Adjustors. Dkt. # 39-1 at 83-93. On May 8, 2014 and January 31, 2015, West Coast Adjustors mailed validation notices to Mr. Dolan's residence for the Proliance Eastside Surgery Center and Proliance

Hand Wrist and Elbow debts, respectively ("Validation Notices").[2]  Dkt. # 38-1 at 2-6.

There was no response from Plaintiff.

On July 29, 2015, SCI purchased the West Coast Adjustors trade name, trade mark, URL (website) address, and the Proliance accounts from CN Collections, Inc.  Dkt. # 42-3 at p. 2, ¶¶ 3-4.  Defendant contends it continued the debt collection process initiated in the prior validation notices.  *Id.*  On June 16, 2017, as "West Coast Adjustors," Defendant filed a collections lawsuit in Snohomish County District Court, Case No. Case No. C17-1461 ("Collection Lawsuit"), seeking to collect on the two medical debts.  Dkt. # 39-1 at 6-8.  Defendant proceeded as the sole named plaintiff for the Collection Lawsuit as "West Coast Adjustors."  *Id.*  On August 17, 2017, Mr. Dolan telephoned Defendant to inquire about its lawsuit.  Dkt. # 39-2 at p. 3, ¶ 16.  Mr. Dolan spoke with Mike Donner, an employee of Defendant.  *Id.* at pp. 13-29.  During this conversation, Mr. Donner made a number of statements to Mr. Dolan in an apparent negotiation, which are the primary subject of Plaintiff's current lawsuit.  *Id.*  This conversation is discussed in more detail below.  On September 5, 2017, Defendant, as West Coast Adjusters, filed a motion for summary judgment in the Collection lawsuit, seeking the outstanding principal amounts of the two debts ($2,674.40), plus calculated prejudgment interest starting from June 10, 2013 to the date of filing ($1,386.81), and associated fees, for a total of $4,386.71.  Dkt. # 39-1 at 29-31.

On October 30, 2017, Mr. Dolan filed the present action in Snohomish County Superior Court, Case No. 17-2-105-61-31.  Dkt. # 1-1.  According to Plaintiff, this lawsuit focuses not on the validity of the underlying debt, but on Defendant's alleged unlawful collections actions that occurred in 2017; to that end, Plaintiff asserts over 90

---

[2] Plaintiff contends he never received these invoices or notices, although the Bothell address indicated on the invoices and Validation Notices is identical to the only address on file for Plaintiff, and the address Plaintiff provided to his health providers on the day of his surgery.

claims under the FDCPA, the WCAA, the WCPA, and Washington state law.  *Id.*   On

November 1, 2017, Defendant removed Mr. Dolan's lawsuit to this Court.  Dkt. # 1.

Defendant then withdrew its summary judgment motion in the Collection Lawsuit

in early November 2017 after Plaintiff field his opposition.  Dkt. # 39-1 at p. 3, ¶ 10.

Defendant filed a second summary judgment motion in the Collection Action in June

2018. Dkt. $ 39-1 at 33-105.  This modified motion contained a proposed order that

sought the same relief as the first motion, with the exception that the prejudgment interest

was calculated starting from June 18, 2013 to the date of filing, instead of June 10, 2013.

*Id*. at 33.  Defendant calculated the amended amount to be $4,657.39.  *Id*.  On September

24, 2018, the Snohomish County District Court denied Defendant's second summary

judgment motion.  Dkt. # 43-1 at 22.

On October 16, 2018, Defendants filed a Motion for Summary Judgment in this

matter, seeking dismissal of this case.  Dkt. # 38.  A day later, Plaintiff filed his Partial

Motion for Summary Judgment.  Dkt. # 39.  Both parties filed responses to the opposing

motion, and replies in support of their own motions.  Dkt. ## 42, 43, 45, 46.

### III.  ANALYSIS

**A.    Summary Judgment Standard**

On a motion for summary judgment, the court must draw all inferences from the

admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred*

*Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate

when there is no genuine issue of material fact and the moving party is entitled to a

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party must first show the

absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).  The burden shifts to the opposing party to show a genuine issue of fact for trial.

*Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The

opposing party must present probative evidence to support its claim or defense.  *Intel*

*Corp. v. Hartford Accident & Indem. Co*., 952 F.2d 1551, 1558 (9th Cir. 1991).

**B.     Preliminary Matters**

As a preliminary matter, on October 19, 2018, Defendants filed a Motion for Leave to File Overlength Brief, requesting leave to exceed the 24-page limit under Local Civil Rule 7(e)(3) in its response to Plaintiff's Motion. Dkt. # 40. However, on November 5, 2018, Defendants filed their combined Motion to Strike and Opposition to Plaintiff's Motion, and this filing complied with LCR 7(e)(3)'s 24-page limitation. Dkt. # 42. Because Defendants have already filed their under-length response, there is no more need to entertain this motion, which is **DENIED AS MOOT**.

Moreover, part of Defendants' Opposition (Dkt. # 42) purports to be a motion to strike inadmissible evidence submitted in support of Plaintiff's Motion, specifically (1) the transcript of Plaintiff's August 17, 2017 phone call with Mr. Donner, on the grounds that the transcript was not properly authenticated; and (2) portions of Plaintiff's declarations, on the grounds that they contain hearsay and are irrelevant. Dkt. # 42 at 3-7. In resolving a motion for summary judgment, the court may only consider admissible evidence. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). At the summary judgment stage, a court focuses on the admissibility of the evidence's content, not on the admissibility of the evidence's form. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001).

Defendants' request to strike a transcript of the August 17, 2017 telephone conversation is premature, and focuses on form, not content. Defendants do not sufficiently establish that a transcript created from a recording Defendant produced in discovery was unreliable, notwithstanding a minor error on the first page. Although Plaintiff did not initially produce the credentials of the company used to transcribe the recording, he did so in his reply briefing, and the Court at this point sees nothing that the

transcription or the content of are wholly improper.  Dkt. ## 46-1, 46-4.  To the extent that Plaintiff's declaration contains any improper legal argument or conclusions or inadmissible hearsay, it will not be considered for the purposes of Plaintiff's Motion.  Finally, to the extent that Plaintiff's declaration contains irrelevant information for the purposes of Plaintiff's Motion, or constitutes speculative and conclusory allegations, it will not be considered here.

**C.    Fair Debt Collection Practices Act**

This action is premised in large part on alleged violations of the Fair Debt Collection Practices Act ("FDCPA," 15 U.S.C. §§ 1692-1692p).  Congress enacted the FDCPA to counter the "abusive, deceptive and unfair debt collection practices sometimes used by debt collectors against consumers." *Turner v. Cook*, 362 F.3d 1219, 1226 (9th Cir. 2004).  The FDCPA's restrictions on debt collectors run from the very broad (such as a prohibition on unfair or deceptive communication) to the very narrow (such as a prohibition on using post cards).  Courts must give the Act a liberal interpretation. *Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1176 (9th Cir. 2006).  The validity of the alleged debt does not bear on FDCPA violation analysis. *Baker v. GC Serv. Corp.,* 677 F.2d 775, 777 (9th Cir. 1982).

Because the FDCPA is a strict liability statute, a debt collector's intent to deceive or mislead a consumer is irrelevant. *Clark,* 460 F.3d at 1175.  Courts apply the FDCPA using a "least sophisticated consumer" standard, which ensures that the "FDCPA protects all customers, the gullible as well as the shrewd … the ignorant, the unthinking, and the credulous." *Id.* at 1171.  The "least sophisticated consumer" standard presents a lower bar for a plaintiff to overcome than does the familiar "reasonable person" standard. *Terran v. Kaplan,* 109 F.3d 1428, 1431-32 (9th Cir. 1997).

The parties do not dispute that Defendant is a debt collector subject to the FDCPA's provisions.  Nor do they dispute the basic facts underlying this lawsuit.

Rather, the parties' dispute primarily centers on whether SCI's collection attempts represent violations of the FDCPA and certain laws of the State of Washington.

### 1. Section 1692e (Counts 1-18)

Both Plaintiff and Defendants move for summary judgment on Plaintiff's Counts 1-18, which all concern violations of 15. U.S.C. § 1692e. Dkt. # 38 at 5-11; Dkt. # 39 at 9-20. Under 15 U.S.C. § 1692e, debt collectors are prohibited from employing "false, deceptive, or misleading representations or means in connection with the collection of any debt." A debt collector violates section 1692e when it "frustrate[s] a debtor's ability to intelligently choose an appropriate response to a collection effort." *Davis v. Hollins Law*, 832 F.3d 962, 964 (9th Cir. 2016). In addition to the general prohibition on "false, deceptive, or misleading representations," the statute includes a non-exhaustive list of prohibited practices. *Davis*, 832 F.3d at 963-64.

"In this circuit, a debt collector's liability under Section 1692e of the FDCPA is an issue of law." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (citing *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997)). The analysis is objective and "takes into account whether the 'least sophisticated debtor would likely be misled by a communication.'" *Id*. (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010)). "The 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Id*. (quoting *Terran*, 109 F.3d at 1432). "Most courts agree that although the least sophisticated debtor may be uninformed, naive, and gullible, nonetheless [their] interpretation of a collection notice cannot be bizarre or unreasonable." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1027 (9th Cir. 2012).

In addition, claims under Section 1692e of the FDCPA contain a materiality element. "In assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." *Donohue*,

592 F.3d at 1034.  In other words, a debt collector's false or misleading representation must be "material" in order for it to be actionable under the FDCPA.  *Id*. at 1033. "The purpose of the FDCPA, 'to provide information that helps consumers to choose intelligently,' would not be furthered by creating liability as to immaterial information because 'by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect).'" *Id*. (quoting *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757–58 (7th Cir. 2009)).  Thus, "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under [section] 1692e." *Id*.

Plaintiff's Complaint contains eighteen alleged violations of various subsections of Section 1692e.  Dkt. # 1-1 at pp. 13-15, ¶¶ 6.11-6.15.  Defendants first move to dismiss these claims on the ground that all of these claims center on the fact that Defendant filed suit on a disputed debt, and suing on a disputed debt does not, by itself, create FDCPA liability.  Dkt. # 38 at 5-6.  Defendants' characterization appears to miss the crux of Plaintiff's argument, which Plaintiff directs at behaviors that exist independent of the validity of the debt, such as alleged false representations during telephone conversations or in the Collection Lawsuit.  *See* Dkt. # 1-1 at 13-15.  In this lawsuit, Plaintiff does not appear to fault Defendants to suing over disputed debt; rather, Plaintiff alleges that Defendants engaged in certain behaviors incidental to the collection of the debt that violate federal and state law.

Plaintiff also moves for summary judgment on his Section 1692e claims.  Dkt. # 39 at 9-20. Although Plaintiff does not cite which specific Counts he seeks summary judgment on, Plaintiff's arguments here focus on the following: (1) Defendants' alleged misrepresentations during a telephone call initiated by Plaintiff on August 17, 2017; and (2) Defendants allegedly seeking to recover, in the Collection Lawsuit, more than what was owed by applying the June 10, 2013 date in its prejudgment interest calculation to

both debts, when one debt allegedly started June 18, 2013. The Court considers each in turn.

###    a.   Alleged Misrepresentations in August 17, 2017 Telephone Conversation

The majority of Plaintiff's claims under Section 1692e center on a series of statements made by Defendant's employee Mike Donner during his August 17, 2017 phone conversation with Plaintiff. Dkt. # 39 at 11-20. Generally, Plaintiff asserts that Mr. Donner made the following misrepresentations: (1) misleading Plaintiff into believing that he had a deadline of 20 days to stipulate to a judgment; (2) misleading Plaintiff into believing that if he made a payment there would be no public record; (3) misleading Plaintiff in to believing that his only option was to agree to a payment plan; (4) misleading Plaintiff into believing that the court could still enter a judgment against him even if Defendant requested none; (5) falsely insinuating that if Plaintiff made a partial payment Defendant "might be able to drag their feet"; and (6) falsely representing that the court approved the format of Defendant's documents. Dkt. # 39 at 9-20.

The Court finds that to the extent any of Mr. Donner's statements during this conversation were "false," Plaintiff fails to show how any of them, separate or combined, were "material." Plaintiff failed to even address the materiality element at all in his initial Motion, or anywhere in his Complaint. Dkt. # 1-1; Dkt. # 39. For the first time, in his Reply, Plaintiff argues that the statements made during the telephone call were "material" because "the least sophisticated consumer *might* have been misled by them." Dkt. # 46 at 8 (emphasis added). This circular argument misses the point of *Donohue*, which teaches that material misstatements are those that are "likely" to mislead the least sophisticated consumer. *Donohue*, 592 F.3d at 1033. Whether the least sophisticated consumer *might* be misled is not the standard.

Plaintiff still had the burden to show how the alleged misstatements affected his ability to intelligently choose his action concerning his debt, which he failed to meet. *See, e.g., id.* (citing approvingly that "materiality is an ordinary element of any federal

claim based on a false or misleading statement."). Plaintiff fails to identify any action he "could have taken that was not already available to [him] on the basis of the information." *Donohue*, 592 F.3d at 1034. As Defendants point out, the alleged misstatements Plaintiff identifies in the telephone conversation all relate to negotiation and discussion of potential actions that could have been taken by either Defendant or the court in the Collection Lawsuit. Dkt. # 42 at 12-13. While Plaintiff alleges he was "confused" by the conversation, he fails to show how any of the alleged misstatements hindered his decisionmaking ability or caused him to think or act any differently. The tenor of Plaintiff's conversation with Mr. Donner was that of a negotiation, concerning what actions Defendant would agree to take in response to Plaintiff's actions, and there is little evidence that Mr. Dolan did not appreciate the adversarial nature of the positions at this time. Plaintiff's decisions after receiving the Collection Lawsuit and the telephone conversation, such as disputing the debt in writing three days later and hiring an attorney to continue these efforts, indicate that he had no intention of paying the debt, relying on Mr. Donner's statements, or engaging in any further negotiation with Defendant. Dkt. # 39-2 at 34.

The only exception to Plaintiff's wholesale neglect of the materiality element arises for the first time in Plaintiff's Reply briefing. Dkt. # 46-1 at pp. 2-5, ¶¶ 6-20. Here, Plaintiff contends that one of Mr. Donner's alleged oral misrepresentations, made during the August 17, 2017 telephone conversation, that Mr. Dolan had 20 days to pay the balance of the debt in full was materially misleading to the least sophisticated consumer. *Id*. Mr. Dolan argues that this communication created a compressed timeframe improperly pressured him to believe that he only had 20 days to pay off his debt – when he actually might have had more time before a judgment – and confused him. Dkt. # 46-1 at pp. 2-5, ¶¶ 6-20.

The Court is reluctant to entertain this argument. First, this argument and evidence of the alleged material effect of the statement are both introduced for the first

time in Plaintiff's Reply briefing, meaning that this argument was likely waived. *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n. 8 (9th Cir. 2009) ("[A]rguments not raised by a party in an opening brief are waived.").

Second, the Court disagrees with Plaintiff's characterization of Mr. Donner's statement, and Plaintiff fails to show how this alleged misstatement is false or deceptive. In the conversation, Mr. Donner appears to be referring to the 20-day timeframe to respond for Plaintiff to avoid a default, which is not necessarily an inaccurate reading of the summons and complaint, and there is no indication anywhere in the record that Mr. Dolan had the impression of a court-imposed 20-day deadline to pay his debt—that is, before his Reply declaration. The tenor of Mr. Donner's representations explains that if Plaintiff can make certain payments, then Defendant could take certain actions on its own to stop or slow down the collection effort. *See, e.g.*, Dkt. # 39 at 14 ("[I]f you can knock this out in 20 days . . . [w]e stop the action . . . ."), It is difficult for the Court to see how this statement could convey, even to the least sophisticated consumer, that Plaintiff's only option was to adhere to a 20-day deadline to stipulate to a judgment, as Plaintiff indicates; rather, it communicates what actions Defendant is willing to take if Plaintiff takes certain actions. Mr. Donner's statement, communicating Defendant's position in a negotiating posture, repeatedly stressed the conditional nature of resolving the case within the 20-day timeframe for Plaintiff to respond to the complaint, and the statements were made in response to Plaintiff's inquiry on how to resolve the lawsuit.

Third, even if this Court construed Mr. Donner's representation as false or misleading and considered Plaintiff's Reply Declaration that he was confused by Mr. Donner's representation, Plaintiff's Reply Declaration fails to offer sufficient evidence of materiality, and does little more than offer a vague recitation of the legal standard for materiality. Plaintiff's Reply Declaration states that the 20-day "misstatement" caused him to believe he had to stipulate to a judgment within 20 days, which "put [him] at a disadvantage [he] would not otherwise suffered in chartering a course of action in

response to [Defendant's] collection efforts or otherwise understanding, making informed decisions about, and meaningfully dealing with the overall situation." Dkt. # 46-1 at p. 3, ¶ 10. Plaintiff does not point to specific facts showing *how* Plaintiff, or the least sophisticated consumer, would be pressured into a different course of action than the one he ultimately took: not paying the debt, hiring a lawyer, and disputing the validity of the underlying debt.[3] Plaintiff does not explain anywhere how his ability, or the ability of the least sophisticated consumer, to assess the risks and rewards of proceeding to litigation was impacted by Mr. Donner's 20-day statement. Plaintiff's course of action, in hiring an attorney to contest the debt, indicate that he was not under the impression that his only option was to stipulate to a judgment.

Based on the record, the alleged 20-day "misrepresentation" does not appear to have impacted Plaintiff's ability to make an intelligent choice in his response to the Collection Lawsuit. Like in *Donohue*, Plaintiff has not identified any action he "could have taken that was not already available" to him on the basis of the information in the Collection Lawsuit. The Court thus concludes, based on the record, that the alleged misrepresentations in the August 17, 2017 phone conversation were not material.

### b. Allegedly Seeking More Debt Than What is Owed

Plaintiff also argues that Defendants violated Section 1692e by seeking to collect from Plaintiff more than what was owed on the debt. One provision of Section 1692e prohibits debt collectors from making a "false representation of ... the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). The sole basis for this claim appears to be a calculation of prejudgment interest Defendant WCA made in its initial summary judgment briefing in the collection lawsuit. Dkt. # 39 at 9-11. Plaintiff alleges

---

[3] Although Plaintiff argues that he would not had given his "family's sensitive financial information" but-for Mr. Donner's alleged misstatements, Plaintiff reason for this is that he believes he would not do so because he believed the debt was invalid, not because of the 20-day comment. Dkt. # 46-1 at p. 3, § 9.

that (1) Defendant cannot collect prejudgment interest on unliquidated debt; and (2) Defendant's calculated amount of prejudgment interest was in error because it calculated interest starting from June 10, 2013 for both debts, when only one of the debts started on that date, the other commencing June 18, 2013. *Id.*

Defendants counter first by arguing that medical debt is liquidated debt, and therefore prejudgment interest can be applied starting from the date when it was owed. Dkt. # 38 at 6-11. Plaintiff responds by arguing his medical debts were unliquidated because Plaintiff never agreed to any particular price and was not informed of the price for his surgery in any contract. Dkt. # 43 at 4-8. In this case, the Court is more inclined to view Plaintiff's debt as liquidated. When the debts were assigned to WCA, the amounts of the two medical debts are able to be known and calculated without resorting to any discretion or expert testimony. *Prier v. Refrigeration Eng'g Co.*, 74 Wash.2d 25, 442 P.2d 621 (1968) (holding "a 'liquidated' claim is a claim where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion."). The principal amounts of the debt were communicated on invoices sent by the Proliance health care providers to Plaintiff. RCW 19.52.010(1) provides that a default rate of 12% per annum applies to liquidated debts, which both parties indicate was the rate applied here. The fact that Proliance charged additional monthly late fees to keep Plaintiff's account open does not change this fact, as the fees were disclosed to Plaintiff in his agreement with the providers. Dkt. # 38-2 at 18.

As Plaintiff observes, finding for Defendants on this point does not necessarily dispose of his claims. Dkt. # 43 at 3-4. Plaintiff argues that even assuming both medical debts were liquidated, Defendants still applied prejudgment interest to debt not owed; specifically, the Proliance Hand, Wrist and Elbow debt, which was not owed until June

18, 2013.[4]  Dkt. # 39 at 10.  In doing so, Plaintiff argues Defendant misrepresented the amount of debt which was owed, and improperly sought to collect that mistaken amount.

Even if Defendants initially miscalculated the date for charging prejudgment interest by charging an extra eight days on one of the two debts, Plaintiff again fails to show how any misrepresentation connected with this mistake were material.  *See, e.g., Donahue,* 592 F.3d at 1034 (concluding that complaint's "mislabeling $32.89 as 12% interest, when $32.89 included both interest and pre-assignment finance charges, is not materially false"); *Gates v. Asset Acceptance, LLC,* 801 F. Supp. 2d 1044, 1048 (S.D. Cal. 2011) (dismissing Section 1692e claim that debt collector misrepresented prejudgment interest start date in state court lawsuit because representation was not material).

Based on the record, the Court concludes that Plaintiff has similarly failed to prove that this alleged miscalculation was material.  This alleged miscalculation occurred, for the first time, during the Collection Lawsuit, and Plaintiff does not explain how the misstatement impinged his ability to make intelligent decisions about his debt, confused him, or changed his decisionmaking in any way.  Plaintiff does not provide any evidence to support the materiality of this alleged miscalculation.  Moreover, the lasting effect of the alleged miscalculation appears to be minimal.  Defendants withdrew their summary judgment motion, with the alleged improper calculation in a proposed order, after removing the present lawsuit to this Court approximately a month after filing it.  Dkt. # 39-1 at p. 3, ¶ 10.  Defendants seemingly corrected their miscalculation by filing a new calculation for summary judgment in a proposed order attached to an updated summary judgment motion.  Dkt. # 39-1 at 33-37.  Plaintiff fails to show how the miscalculation of

---

[4] Although Plaintiff claims that this initial calculation resulted in Defendant seeking more debt than what was owed, Plaintiff does not provide the Court with his own calculation to demonstrate Defendants' alleged calculation error.

less than $300, which was withdrawn a little more than a month later and was later corrected in a subsequent motion, was material.

Even accepting Plaintiff's allegations on this point as true, they do not establish liability under Section 1692e. Accordingly, because Plaintiff has failed to prove the materiality element for his Section 1692e claims, the Court **DENIES** Plaintiff's Motion, **GRANTS** Defendants' Motion, and **DISMISSES** Plaintiff's Counts 1-18.

### 3. Section 1692f

Under 15 U.S.C§ 1692f, debt collectors are barred from using "unfair or unconscionable means to collect or attempt to collect any debt." Like Section 1692e, Section 1692f identifies eight non-exhaustive examples of unfair or unconscionable means of collecting a debt. *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994). Also like Section 1692e claims, whether conduct violates Section 1692f "requires an objective analysis that considers whether the least sophisticated debtor would likely be misled by a communication. *Donohue*, 592 F.3d at 1033 (collecting cases) (internal citations omitted). Under *Donohue*, the same materiality requirement for claims arising under Section 1692e apply to those arising under Section 1692f. *Id*.

Here, all of Plaintiff's claims arising under Section 1692f are derivative of his claims under Section 1692e, which include allegations of Mr. Donner:

> • Falsely representing to Mr. Dolan the Summons and Complaint he was served in the Collection Lawsuit required him to pay the balance in full within 20 days after service of process;

> • Falsely representing to Mr. Dolan that if he paid the balance within 20 days after service of the Summons and Complaint, there would be "no public record or anything like that";

> • Falsely representing to Mr. Dolan that, even if Defendant requested that no judgment be entered against Mr. Dolan, the court could still enter a judgment against him;

• Deceptively representing to Mr. Dolan that Defendant "might" be able to drag its feet and sit on the file if he could drop some money in the first 20 days and pay off the remaining balance in the next 30 days, suggesting two possibilities at least one of which was inaccurate;

• Misleading Mr. Dolan to believe he had to agree to a judgment against him for the full amount even if he agreed to make payments on the alleged debt; and

• Falsely representing that the courts have suggested that Defendant's paperwork be in the format it is in.

Dkt. # 39 at 20. Again, while Plaintiff points to a number of statements made during the August 17, 2017 phone conversation as false or deceptive, Plaintiff fails to provide any evidence or argument that these statements were material. As with the Section 1692e claims, the only exception is for Count 30, where Mr. Dolan provides a declaration attesting to his confusion and the potentially misleading nature of Mr. Donner's oral statement. Again, Plaintiff's Reply Declaration is devoid of detail as to how this alleged misstatement was material, and the record as presented indicates that none of these alleged mispresentations were material.

Accordingly, for the same reasons Plaintiffs' claims under Section 1692e failed, so do Plaintiff's nearly identical claims brought under Section 1692f. The Court **DENIES** Plaintiff's Motion on this point, **GRANTS** summary judgment for Defendants, and **DISMISSES** Plaintiff's Counts 19-36.

### 4.      Section 1692g

Plaintiff's Complaint asserts, in Counts 37-39, three violations of 15 U.S.C § 1692g. Dkt. # 1-1 at pp. 16-17, ¶¶ 6.22-6.30. Generally, § 1692g(a) provides that "in either the initial communication with a consumer in connection with the collection of a debt or another written notice sent within five days of the first, a debt collector must provide specific information to the consumer." *Janetos v. Fulton Friedman & Gullace,*

*LLP*, 825 F.3d 317, 320-31 (7th Cir. 2016).  Specifically, § 1692g(a) states that the notice must contain:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).  The purpose of the validation notice requirement in 15 U.S.C. § 1692g(a) "is to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'"  *Perry v. Columbia Recovery Group, LLC*, 2016 WL 6094821 at *8 (W.D. Wash. Oct. 19, 2016) (quoting S. Rep. No. 95-382, at 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1699).  In addition, the written notice cannot "overshadow or be inconsistent with [these required disclosures]." § 1692g(b).

Though he denies receipt, Plaintiff does not dispute that WCA mailed two validation notices to Plaintiff at his Bothell address in 2014 and 2015.  Dkt. # 38-1 at p. 2, ¶¶ 5-6; Dkt. # 38-4 at 15.  The Court has reviewed these two Validation Notices and finds that they comply with the requirements of Section 1692g.  Both notices contain (1) the amount of the debt; (2) the name of the creditor, listed as the health care provider; and (3)

the required statements under the FDCPA.  Dkt. # 38-2 at 3-6.[5]  Moreover, to the extent

Plaintiff alleges that the Validation Notices sent by WCA in 2014 and 2015 violate the

FDCPA, those claims would be time-barred.  Actions to enforce liability for violations of

the FDCPA must be brought "within one year from the date on which the violation

occurs."  15 U.S.C. § 1692k(d); *see also Naas v. Stolman*, 130 F.3d 892, 893 (9th

Cir.1997).  In the Ninth Circuit, this statute is governed by a discovery rule, in which the

statute of limitations is equitably tolled until the party alleging injury discovers, or in the

exercise of reasonable investigation should have discovered, the injury giving rise to the

claim.  *See Mangum v. Action Collection Serv., Inc.,* 575 F.3d 935, 940 (9th Cir. 2009).

Under the FDCPA, a debt collector is required to "send" written validation notices via

mail.  *Mahon v. Credit Bureau of Placer Cty. Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999),

*as amended on denial of reh'g and reh'g en banc* (Apr. 28, 1999) ("We hold that section

1692g(a) requires only that a Notice be 'sent' by a debt collector. A debt collector need

not establish actual receipt by the debtor.") (citing *Anderson v. United States*, 966 F.2d

487, 491 (9th Cir. 1992)).  The record indicates WCA did so in 2014 and 2015 by mailing

copies to Plaintiff's only known address—the same address given by Plaintiff to his

health care providers, and where the summons and complaint for the Collection Lawsuit

were successfully served.  Dkt. # 38-1 at p. 2, ¶¶ 5-6; Dkt. # 38-4 at 15.  The Court

concludes that Defendant complied with Section 1692g by sending the Validation

Notices via mail to Plaintiff.

---

[5] Plaintiff's Complaint appears to fault certain of Defendant's validation notices for (1) failing to inform Plaintiff he has a right to request verification and/or validation of the alleged debt; (2) failing to state that the amount of debt may vary from day to day; and (3) failing to inform Plaintiff that he has a right to obtain and up to date amount of the debt allegedly due. Dkt. # 1-1 at p. 17, ¶¶ 6.25-6.28.  It is not clear if these Validation Notices are the subject of Plaintiff's Complaint, but in any event, the Section 1692g violations Plaintiff alleges in his Complaint either do not list requirements of the statute or misconstrue the clear language of the Validation Notices.

1    Accordingly, as stated in the Complaint, Plaintiff's Section 1692g claims fail as a

2   matter of law.  However, this is not the crux of Plaintiff's argument on summary

3   judgment.  In his Motion, Plaintiff contends, for the first time, that these Validation

4   Notices were sent when West Coast Adjustors was under different ownership in 2014 and

5   2015.  Dkt. # 39 at 23.  Plaintiff primarily relies on the Ninth Circuit's decision in

6   *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068 (9th Cir. 2016).[6]  Dkt. #

7   39 at 22.  In *Hernandez*, the Ninth Circuit held that "the FDCPA unambiguously requires

8   any debt collector—first or subsequent—to send a § 1692g(a) validation notice within

9   five days of its first communication with a consumer in connection with the collection of

10  any debt."  *Hernandez*, 829 F.3d at 1081.  Plaintiff contends that under Hernandez,

11  because the WCA that sent his original Validation Notices was purchased by SCI, this

12  new entity was required to send an additional validation notice.  Plaintiff argues that

13  since SCI purchased the WCA assets in 2016, SCI was a successive "debt collector" and

14  therefore was required to provide a new validation notice upon a new "initial

15  communication."  Dkt. # 39 at 21-23.  Plaintiff argues that since the "initial

16  communication" with the SCI-owned WCA occurred in August 17, 2017, and Defendant

17  did not submit a validation notice after this date, Defendant failed to comply with Section

18  1962g.  *Id.*

19    At the outset, the Court is reticent to consider Plaintiff's argument, which is not

20  mentioned in the Section 1962g allegations set forth in Plaintiff's Complaint.  *See Navajo*

21  *Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (en banc) (when the

22  necessary factual allegations to state a claim are not in the complaint, "raising ... [these

23  allegations] in a summary judgment motion is insufficient to present the claim to the

24  district court").  Even if this Court did consider this argument, the present case is, in

25

26      [6] Defendants urge the Court not to apply *Hernandez* retroactively; however, the Court
    need not do so in this case, as Defendants' collection efforts extended beyond *Hernandez*'s
27  decision date in July 2016.

significant part, factually distinguishable from *Hernandez*. *Hernandez* answered the question of whether successive debt collectors are both required to furnish validation notices under Section 1692g; it did not answer the question of what to do in the situation where the ownership or operation of the *same* debt collector changes from one company to the other. *Hernandez* does not mandate that every technical change to a debt collector entity's corporate form or representation mandates a new validation notice. *Hernandez* did not address, for instance, whether the attorneys for the debt collector in that case were exempt from these requirements because they were acting as agents for the original debt collector. *Hernandez*, 829 F.3d at 1071 n.1. Subsequent cases in this Circuit indicate that where a debt collector undergoes a functionally unimportant change, such as a name change, the debt collector will not be required to submit additional validation notices. *See, e.g., Heffington v. Gordon, Aylworth & Tami, P.C.*, No. 3:16-CV-02079-AC, 2017 WL 6626317, at *4 (D. Or. Dec. 28, 2017) (finding that a debt collector's name change, even if "significant," would not require a second validation notice under Section 1692g). In *Heffington*, for instance, the District of Oregon ruled that a law firm's name change to reflect new partners did not require the law firm to send a subsequent validation notice, as the same firm disclosed the continuity of its ownership and its debt collection efforts in subsequent communications, and "a debt collector changing its business name for reasons presumably unrelated to the collection of a specific debt is not the type of fraudulent or deceptive practice the FDCPA was intended to address." *Heffington*, 2017 WL 6626317 at *4.

Defendants contend that as it relates to this debt, the two versions of WCA operate as the same debt collector, despite the change in ownership, because in acquiring the name and operations of WCA, as well its assets and liabilities, in 2016, SCI "stepped into WCA's shoes." Dkt. # 42 at 17. The record supports Defendants' characterization. When SCI purchased WCA and all of its assets in 2016 and took over collection of WCA's debt, it also purchased the name to maintain the continuity of the debt collection

efforts.  Dkt. # 38-2 at p. 2, ¶ 3; Dkt. # 42-3 at p. 2, ¶ 3.  For these debts, SCI continued

doing business as WCA, including filing the Collection Lawsuit against Plaintiff as

WCA, the same entity that sent the Validation Notices.  In doing so, SCI maintained the

existing line of communication by maintaining the debt collection efforts through a single

named debt collection entity—WCA.  *See, e.g., Heffington* 2017 WL 6626317, at *4 (D.

Or. Dec. 28, 2017) ("Finally, a debt collector changing its business name for reasons

presumably unrelated to the collection of a specific debt is not the type of fraudulent or

deceptive practice the FDCPA was intended to address.  In fact, allowing a debt collector

to change its operational name and continue the flow of communication with its debtors

uninterrupted furthers the FDCPA's goal of reducing confusion by maintaining

consistency in a consumer's existing chain of communication with a single collection

entity.").  Like in *Heffington*, the change in WCA's ownership, while technically

resulting in a new corporate entity, did not significantly change the debt collection

relationship between the parties, as Defendant maintained both the name and the existing

line of communication of the original debt.  Plaintiff's newly-asserted position requiring

the same information to be provided to Plaintiff again and again, when there was no

meaningful change in the identity of the debt collector or Plaintiff's payment obligations,

serves little purpose, and the Court does not interpret Section 1692g or *Hernandez* to

compel that result in this case.

     The Court is cognizant of Congress' intent, in passing the FDCPA, in enacting a

remedial statute designed to protect the consumer by eliminating abusive debt collection

practices.  *Hernandez*, 829 F.3d at 1079.  The Court also recognizes that in as it pertains

to Section 1962g, a prominent concern in requiring successive debt collectors to each

provide their own validation notice serves the interest of ensuring the consumer is free

from misinformation that results as a debt changes hands.  *Id*.  However, the Court does

not believe that Congress, or the Ninth Circuit in *Hernandez*, intended to create

hypertechnical protections under Section 1692g that create liability in situations where there is little evidence or danger of abusive practices.

In the unique circumstances of this case, the Court does not believe that requiring a second set of validation notices would serve the consumer protection principles outlined in *Hernandez*, or frustrate Congress' intent in enacting the consumer protection legislation. There is no indication that information was lost or misinformation resulted as a result of the change in WCA's ownership; instead, the record indicates that Plaintiff was not confused by this change. For instance, after the Collection Lawsuit was filed, Plaintiff had no trouble getting in contact with Defendant's representative Mr. Donner, even though the Collection Lawsuit was filed as "West Coast Adjustors," not "Sentry Credit." This is not a case where one debt collector assigned a debt to another, as *Hernandez* contemplates; rather this case presents the unique circumstance where an entity acquired a debt collector and attempted to maintain a continuity of the existing debt collection relationship by keeping and operating under the same name and through the existing line of communication. There is no indication that any misinformation resulted from this change in ownership, that Plaintiff relied on previous representations from WCA that were not carried over into new ownership, or that Plaintiff's obligations or his understandings thereof of his debt were impacted in any way. Instead, the evidence in the record indicates that at all relevant times, the parties viewed the WCA that sent the Validation Notices, the WCA that initiated the Collection Lawsuit, and the current Defendant that does business as WCA as functionally the same entity. Plaintiff's own statements indicate he agrees with this characterization: for instance, Plaintiff repeatedly claims that "Defendant" initiated the Collection Lawsuit—WCA is the only named plaintiff in the Collection Lawsuit. *See, e.g.*, Dkt. # 1-1 at p. 6, ¶ 5.1; Dkt. # 29-1 at 5-90. Plaintiff's theory, which arises for the first time in its summary judgment briefing, that SCI and WCA are two distinct entities contradicts his previous and current positions that the two entities should be treated as one and the same.

1     Accordingly, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendants'

2     Motion as to Plaintiff's Section 1692g claims, and dismisses these claims (Counts 37-39).

3     **D.     State Law Claims**

4          After dismissing Plaintiff's Counts 1-39, the only claims that remain arise under

5     Washington law.  *See* Dkt. # 1-1 at pp. 17-26, ¶¶ 7.1-10.6.  This Court has discretion to

6     decline supplemental jurisdiction over the remaining state law claims and remand the

7     matter to state court.  *See* 28 U.S.C. § 1367(c)(3); *see also Carnegie-Mellon Univ. v.*

8     *Cohill*, 484 U.S. 343, 350 (1988) (finding that "pendent jurisdiction is a doctrine of

9     discretion, not of plaintiff's right.") (citations omitted); *United Mine Workers of America*

10    *v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided

11    both as a matter of comity and to promote justice between the parties, by procuring for

12    them a surer-footed reading of applicable law.").  Where such state claims arrived at the

13    Court by way of removal, remand is often more appropriate than dismissal.  *Carnegie-*

14    *Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) ("This Court's crafting of the pendent

15    jurisdiction doctrine in *Gibbs* strongly supports the conclusion that when a district court

16    may relinquish jurisdiction over a removed case involving pendent claims, the court has

17    discretion to remand the case to state court.").  The Court is also reluctant to change the

18    contours of debt collection practices under Washington state law without a pressing need

19    to do so.  Plaintiff and Defendants already are engaged in ongoing state court proceedings

20    related to these debts, and there is no indication that this forum is inadequate to address

21    Plaintiff's remaining claims.

22         Therefore in the interest of justice, rather than dismissing the remaining state law

23    claims, the Court **REMANDS** the remaining claims in this matter to Snohomish County

24    Superior Court, the state court from which it was removed.  *See* 28 U.S.C. § 1447(c).

25                              **IV.   CONCLUSION**

26         For the reasons stated above, the Court **DENIES** Plaintiff's Partial Motion for

27    Summary Judgment (Dkt. # 39) and **GRANTS IN PART AND DENIES IN PART**

Defendants' Motion for Summary Judgment (Dkt. # 38).  The Court **DISMISSES**
Plaintiff's FDCPA claims (Counts 1-39), and **REMANDS** the remaining state law claims
to Snohomish County Superior Court.[7]  The Court **DENIES AS MOOT** Defendant's
Motion to File an Over length Brief.  Dkt. # 40.

Dated this 17th day of December, 2018.

_____
The Honorable Richard A. Jones
United States District Judge

---

[7] Because the Court is dismissing Plaintiff's federal claims and remanding the remaining
state law claims, it does not need to address the parties' remaining arguments for or against
summary judgment, and it will not do so here.